IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORMAN T. STEWARD,

        Petitioner,

v.

COMMON WEALTH, et al.,

        Respondents.

CIVIL ACTION
NO. 13-2552

**OPINION**

**Slomsky, J.**                                                                                                                                     June 8, 2016

**I.**       **INTRODUCTION AND BACKGROUND**

Before the Court is the pro se Petition for Writ of Habeas Corpus of Norman T. Steward ("Petitioner"), a state prisoner, pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On February 27, 2015, United States Magistrate Judge David R. Strawbridge issued a Report and Recommendation (the "Report"), recommending that the Petition be denied and that a certificate of appealability not be issued. (Doc. No. 21.) On March 24, 2015, Petitioner filed Objections to the Report. (Doc. No. 24.) The Court has reviewed all pertinent documents, and for reasons that follow, will approve and adopt the Report (Doc. No. 21) and deny the Petition (Doc. No. 1) with prejudice.[1]

---

[1] For purposes of this Opinion, the Court has considered the pro se Petition for Writ of Habeas Corpus (Doc. No. 1), the Government's Response to the Petition for Writ of Habeas Corpus (Doc. No. 11), the Report and Recommendation of United States Magistrate Judge David R. Strawbridge (Doc. No. 21), Petitioner's Objections to the Report (Doc. No. 24), and the relevant state court record.

In 2007, Petitioner was convicted of second-degree murder, robbery, and criminal conspiracy to commit robbery. The convictions arose from an agreement to rob a woman in Allentown, Pennsylvania. The following factual account is taken from the trial court opinion:

> Jarret Hursh ("Hursh") testified for the Commonwealth. Hursh was a co-defendant with Steward whose case was severed from this case and who entered a guilty plea prior to Steward's trial on September 21, 2007 to Criminal Homicide-Murder of the Third Degree, Robbery and Criminal Conspiracy to Robbery. Hursh testified that, on July 30, 2005, at approximately 8:00 p.m., he made arrangements to buy marijuana from an individual known as "N.Y." inside a McDonald's Restaurant located on Lehigh Street in Allentown. Hursh further testified that he advised Steward of the drug transaction and conveyed to Steward his concern about being robbed. As a result, Steward agreed to accompany Hursh and provide protection. Hursh testified that Steward, who was a close friend of his, brought along a sawed-off, twelve gauge shotgun. Hursh testified that when they arrived at the McDonald's, Steward had the shotgun concealed in his pant leg. Hursh testified that he was familiar with the shotgun because he, Hursh, had purchased it on the street.
>
> When the marijuana dealers arrived, they robbed Hursh at gunpoint. Hursh testified that he and Steward then left the McDonald's together, irate at having been robbed. Both proceeded to a nearby set of railroad tracks where Steward removed the shotgun from his pant leg and concealed it near some shrubbery. They then proceeded to the apartment of Hursh's girlfriend, Desiree Casablanca. Hursh's testimony was later corroborated by the testimony of Desiree Casablanca.
>
> Hursh testified that, a few hours later, he and Steward proceeded to the area of Fountain and Monroe Streets in Allentown, also known as "the Block." Hursh testified that Steward had the shotgun concealed in his pant leg and that they went to the Block in order to find "N.Y." and reclaim their money. Witnesses at the scene confirmed Hursh's testimony that he arrived on the Block with Steward. Specifically, Byron Odom testified that a black male matching Steward's description was with Hursh at that time and had what appeared to be a shotgun stuffed down his pant leg. Odom testified that said black male was agitated and acted aggressively. Another witness, Maria Torres, positively identified Steward as being on the Block with Hursh hours before the murder.
>
> Hursh testified that, when he and Steward realized that they would be unable to locate "N.Y.," Byron Odom volunteered an "easy target" for a robbery. Hursh testified that Odom led Hursh and Steward down an alley and pointed out the house of Michelle Vasquez, who later became the victim of the killing that is the subject of this case. Hursh testified that he and Steward agreed to commit the robbery together and that he was to act as the look-out while Steward agreed to "do it." Hursh testified that he positioned himself a half-block away and that

Steward went to Michelle Vasquez's residence alone with the shotgun. Hursh testified that, moments later, he heard a loud gunshot and shortly thereafter Steward ran back to him and stated something to the effect that the victim had pointed a gun at him. Hursh further testified that Steward admitted to shooting the victim and seeing her head jerk back. Hursh testified that Steward described the shooting as "crazy." Both Hursh and Steward then fled the scene together.

Commonwealth witness Christopher Conte testified that, immediately after the murder, he saw two men matching the descriptions of Steward and Hursh run by him and drop a shotgun. Conte testified that he and his friend, Joseph Delvalle, recovered the shotgun that Steward and Hursh had discharged and it was still warm. Joseph Delvalle confirmed Conte's testimony and further indicated that he opened the shotgun, removed a spent, red-colored shotgun shell and threw it into a storm drain.

Hursh testified that, later that night, he and Steward arrived at the house of Nathan Petruska ("Petruska"), who was also a witness in this case. Hursh's testimony was confirmed by that of Petruska's girlfriend, Danyell Corcoran, who testified that Hursh and Steward visited her residence in the early morning hours after the murder. She testified that Steward said that he shot someone because they "drew down" on him.

The Commonwealth's experts established that the victim, Maria Vasquez, was in fact shot with a twelve-gauge shotgun in the head while standing just inside the doorway to her apartment, confirming part of Hursh's testimony, and [t]hat she died as a result of that gunshot.

The jury had a full opportunity to assess Hursh's credibility. It heard evidence of Hursh's prior inconsistent statements, prior convictions and his plea agreement, as well as the above-described evidence that corroborated Hursh's testimony that Steward killed Michelle Vasquez during the course of the robbery Steward and Hursh had planned together.

Commonwealth v. Steward, No. 2006/2043, slip op. at 2-5 (Pa. Ct. Com. Pl. Apr. 11, 2008).

Magistrate Judge Strawbridge explained the procedural history in this case as follows:

Prior to the trial, the prosecutor filed a Motion in Limine, opposed by Steward's counsel, which sought to admit the preliminary hearing testimony of Petruska as an unavailable witness who had previously been subject to cross-examination at the preliminary hearing. A hearing was held on the motion on October 15, 2007. Petruska's testimony was later admitted at trial despite a renewed objection from Steward's counsel.

After the trial, Steward moved for acquittal and for a new trial on a number of grounds. Pertinent to habeas relief, he claimed that the verdict was against the

3

weight of the evidence and further that the trial court erred in allowing Petruska's testimony to be admitted in that it "violated Mr. Steward[']s confrontation clause, due process[,] and equal protection rights under the United States Constitution and the Pennsylvania Constitution." The trial court denied the post-trial motions in an opinion dated April 11, 2008.

Steward then filed a Notice of Appeal on April 22, 2008. On appeal to the Superior Court, he provided four grounds for relief. Relevant to this Petition, he argued that the admission of Petruska's preliminary hearing testimony was inadmissible because Petruska was not shown to be "unavailable" and that he was not afforded a "full and fair opportunity" to cross-examine him at the preliminary hearing, violating his Sixth Amendment right to confront the witness. The Superior Court denied his appeal on August 13, 2010. He did not then appeal the Superior Court's ruling.

On May 11, 2011, Steward filed a "Petition for Post Conviction Relief Pursuant to Pennsylvania's Post Conviction Relief Act ('PCRA'), 42 Pa. Cons. Stat. § 9541 et. seq." He was appointed PCRA counsel, who filed an "Amended Motion for Post Conviction Collateral Relief Pursuant to the Post Conviction Relief Act 42 Pa. Const. Stat. § 9541, et. seq." on November 9, 2011. In that filing, Steward contended that his appellate counsel was ineffective in that his attorney, Glennis Clark, failed to notify him that the Superior Court had denied his appeal, denying him his opportunity to pursue his appeal to the Supreme Court.

In an order dated March 26, 2012, the PCRA court, in accordance with the agreement of the parties, granted his relief as to the ineffectiveness claim, allowing him to pursue his direct appeal to the Pennsylvania Supreme Court. His Petition for Allowance of Appeal to the Supreme Court was filed on April 25, 2012. The Pennsylvania Supreme Court denied the Petition on March 1, 2013.

(Doc. No. 21 at 4-6 (internal citations omitted).)

On May 9, 2013, Petitioner initiated the present action by filing a pro se Petition for a Writ of Habeas Corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. (Doc. No. 1.) On June 25, 2013, the Court referred the case to United States Magistrate Judge David R. Strawbridge for a Report and Recommendation. (Doc. No. 10.) Respondents subsequently filed a Response in Opposition to the Petition. (Doc. No. 11.)

4

On February 27, 2015, Magistrate Judge Strawbridge issued his Report, recommending that Petitioner's claims for relief be denied and that a certificate of appealability not be issued. (Doc. No. 21.) On March 24, 2015, Petitioner filed Objections to the Report. (Doc. No. 24.) Petitioner's Objections to the Report are now before the Court for review. For reasons that follow, the Court will deny Petitioner's Objections and will adopt and approve the Report.

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B) and local rules of court, a district judge may designate a magistrate judge to file proposed findings and recommendations in regard to a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. "Within fourteen days after being served with a copy [of the magistrate judge's report], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). E.D. Pa. Local Civil Rule 72.1.IV(b) requires an objecting party to "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." With respect to pro se litigants, however, this rule may be relaxed. See McCabe v. Pennsylvania, 419 F. Supp. 2d 692, 695 (E.D. Pa. 2006) (treating pro se litigant's letter to court as an objection).

The district judge "shall [then] make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)). The Third Circuit has

"assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

### III. ANALYSIS

In his Petition, Petitioner made five arguments: (1) the testimony of several witnesses regarding his possession of a firearm was improperly admitted; (2) statements by witnesses implicating Petitioner were false; (3) one witness was allowed to testify despite "harboring a fugitive"; (4) his case was filed under the wrong social security number; and (5) his rights under the Confrontation Clause of the Sixth Amendment were violated. (Doc. No. 21 at 1-2.) In recommending that the Petition be denied, Magistrate Judge Strawbridge found that all five claims were procedurally defaulted because they were not fairly presented to the state courts. In addition, he found that the fifth claim, which was filed after the Petition, was untimely. (Doc. No. 21 at 7-11.)

Petitioner makes three Objections to the Report: (1) Commonwealth witness Byron Odom was presented under false pretenses, and because he was an accomplice the trial court should have instructed the jury on "corrupt source/accomplice"; (2) the Commonwealth "opens a can of worms producing Jarret Hursh as a witness" because Hursh perjured himself; and (3) certain "vital evidence" involving Nathan Petruska was not presented to the jury by the Commonwealth. (Doc. No. 24 at 3-7.) For reasons that follow, Petitioner's Objections are without merit.

#### A. Petitioner's First Objection Will Not Be Considered Because It Was Not Raised in the Petition

Petitioner first objects to the Commonwealth presenting Byron Odom as a witness at trial "under false [pretenses]." (Doc. No. 24 at 3.) According to Petitioner, because Odom was an

accomplice, the trial court should have given a jury instruction on "corrupt source/accomplice." (Id. at 4.) Petitioner did not raise this argument in the Petition (Doc. No. 1).

To the extent that Petitioner's Objections raise arguments not raised in his Petition and not addressed in the Report, the Court will not consider them. See Local Rule 72.1(IV)(c) ("All issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."); Sessom v. Wenerowicz, No. 13-2179, 2013 WL 5761303, at *1 (E.D. Pa. Oct. 24, 2013) ("Though the Third Circuit has yet to specifically address how District Courts are to deal with issues and facts first raised by habeas petitioners in an objection to a magistrate's R & R, courts within this district and around the country have routinely refused to hear arguments similarly raised for the first time in an objection to an R & R."); Stromberg v. Varano, No. CIV. A. 09-401, 2012 WL 2849266, at *2 (E.D. Pa. July 11, 2012) (collecting cases). Because Petitioner is raising this portion of his argument for the first time in his Objections, the Court will not address it.[2]

### B. Petitioner's Second and Third Objections Are Without Merit Because the Arguments Are Procedurally Defaulted

Petitioner's remaining Objections are procedurally defaulted. His second Objection concerns the testimony of Commonwealth witness Jarret Hursh. He argues that Hursh's cooperation with the government "does not exscuse [sic] perjured testimony." (Doc. No. 24 at 4.) In his third Objection, Petitioner avers that he was denied the opportunity to "fairly and fully" cross-examine Commonwealth witness Nathan Petruska regarding Petruska's statement

---

[2] Even if Petitioner had raised this argument in the Petition, it would have been ruled procedurally defaulted. Petitioner did not raise this argument before the state courts, and has not provided any explanation for his failure to do so.

7

that he and Petitioner were friends.  (Doc. No. 24 at 6.)  According to Petitioner, Petruska's girlfriend "stated that Petruska and Steward were not friends in fact they had a fall out, concludes that unavailable witness Petruska stating that he and defendant Steward was friends was not fairly and fully cross exsamined [sic] which is a 'Constitutional violation.'"  (Id.)  As Magistrate Judge Strawbridge explained, in this argument "[Petitioner] appears to be invoking the Sixth Amendment's Confrontation Clause and predicates his argument upon the fact that, at the time of the preliminary hearing, he was not provided a statement showing that Danyell Corcoran [Petruska's girlfriend] had told the police that he and Petruska had a 'falling out.'"  (Doc. No. 21 at 9.)

Magistrate Judge Strawbridge noted in the Report that these arguments were not presented as claims to the state courts.  (Doc. No. 21 at 8, 9.)  For this reason, Magistrate Judge Strawbridge found both claims to be procedurally defaulted under 28 U.S.C. § 2254(b)(1)(A).  (Id.)  The Court agrees.  Though Petitioner raised a Confrontation Clause violation argument on appeal to the Superior Court, that claim was predicated on his inability to access evidence including Petruska's criminal record and prior statements made to police.  (Id. at 9.)  The claim raised in the Petition concerns an inability to "fairly and fully" cross-examine Petruska because Petitioner was unaware of a statement given by Petruska's girlfriend that contradicted Petruska's testimony.

In habeas corpus jurisprudence, a petitioner must show that the claim raised in the federal habeas petition has been exhausted.  In other words, a petitioner must show that the claim was "fairly presented" to the state courts.  Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  A claim in a habeas petition must be "substantially equivalent to that litigated in the state court."  O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir.

1987).  Both the legal theory and the facts supporting a federal claim must have been submitted to the state court." Id.  If the claim was not "fairly presented," the claim is procedurally defaulted, and the federal court will not consider it. Coleman v. Thompson, 501 U.S. 722, 729-32 (1991).  However, if a habeas petitioner can demonstrate "cause" for the procedural default and "prejudice" as a result therefrom, the procedural default will be excused. Murray v. Carrier, 477 U.S. 478, 485-95 (1986).  This exception allows a federal court to review the claim, even though it was not fairly presented to the state courts.

Here, Petitioner did not raise the claims referenced in his second and third Objections in the state courts.  Therefore, absent a showing of cause and prejudice, these claims are procedurally defaulted.  Petitioner has not provided any explanation for his failure to raise these claims in the state courts, nor has he made any showing of prejudice.  As such, Magistrate Judge Strawbridge was correct to conclude that these claims are procedurally defaulted.[3]

## IV.   CONCLUSION

For the aforementioned reasons, the Court will deny Petitioner's Objections and instead will approve and adopt Magistrate Judge Strawbridge's Report and Recommendation, denying Petitioner's claims for habeas relief.

An appropriate Order follows.

---

[3] Additionally, Magistrate Judge Strawbridge was correct to conclude that the claim referenced in Petitioner's third Objection was untimely.  The AEDPA provides a one-year statute of limitations for habeas corpus petitions.  28 U.S.C. § 2244(d)(1).  Based on this rule, Petitioner had until May 30, 2014 to file a habeas petition.  This claim was raised in a supplemental filing dated June 1, 2014, after the statute of limitations had run.  (Doc. No. 14.)